[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-12033
Non-Argument Calendar
_____

D.C. Docket No. 6:11-cr-00221-JA-KRS-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

STEPHEN B. DELUCA,
a.k.a. Steve Deluca,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(October 25, 2016)

Before MARTIN, ROSENBAUM, and ANDERSON, Circuit Judges.

PER CURIAM:

Following his convictions for defrauding financial institutions, Stephen DeLuca appeals the denial of his motion to dismiss the indictment against him based on the government's violation of his attorney-client privilege. The district court agreed that the government had violated DeLuca's attorney-client privilege by reviewing privileged email communications but ultimately concluded that he was not entitled to dismissal of the indictment because he had not shown that he was prejudiced by the violation. In his sole contention on appeal, DeLuca argues that, in light of technological changes in communication, defendants should no longer have to show prejudice in order to obtain dismissal of the indictment as a sanction for the government's deliberate invasion of a defendant's attorney-client privilege. After careful review, we affirm.

## I.

A federal grand jury returned a thirty-three-count indictment alleging that DeLuca defrauded financial institutions in his role as president and sole shareholder of Delco Oil, Inc. ("Delco"), a company that distributed oil and gasoline. The indictment claimed that DeLuca, in seeking financing for Delco, submitted false statements to lending institutions regarding the company's accounts receivable and inventory, and that the institutions made loans to Delco in reliance on the fraudulent information. DeLuca pled not guilty, and the case

proceeded to trial. The jury deadlocked, however, so the district court declared a mistrial. After a second trial, a jury found DeLuca guilty of all charges.

As part of its investigation, the Federal Bureau of Investigation ("FBI") searched Delco's offices and seized the company's computers and hard drives. The government also acquired a particular external hard drive relevant to the investigation. Data on these devices included communications between DeLuca and his various lawyers. DeLuca notified the government of that fact, and the parties discussed a proposed stipulation providing a procedure to exclude privileged communications from the government's criminal investigation.

The proposed stipulation provided, in broad terms, that an FBI computer analyst would segregate any communications to or from DeLuca's attorneys based on a list of attorneys that DeLuca provided. These segregated communications would then go to a "filter team," who were not members of the prosecution team, while the remaining communications would go to the prosecution. If the filter team believed that any communications were not privileged, or that the privilege had been waived, the team would provide notice to DeLuca, who could contest the filter team's assessment and have the matter resolved by a magistrate judge. Any communications over which a disagreement existed were not to be provided to the prosecution team until a magistrate judge determined that the communications were not privileged. DeLuca signed the stipulation in December 2009.

3

Thereafter, the FBI computer analyst segregated the data and provided the potentially privileged communications to the filter team, but one of the members of the filter team, John Guard, a former Assistant United States Attorney ("AUSA"), unilaterally decided that the stipulation was not in effect for various reasons. As a result, he gave the prosecution team—without notice to DeLuca—access to communications that he deemed not privileged, including at least some communications between DeLuca and attorneys on DeLuca's list. Guard gave these communications to Vanessa Stelly, the FBI agent assigned to DeLuca's case, who reviewed them and ultimately provided one of the email communications to Russell Stoddard, the AUSA in charge of DeLuca's trial.

DeLuca first learned that the government had accessed his privileged communications in February 2013, just before the start of the second trial, after the government filed an amended exhibit list that included an email from DeLuca to his attorney from January 2006 regarding Wachovia Bank ("the Wachovia email"). In response, DeLuca filed a motion to dismiss the indictment based on the government's violation of both his attorney-client privilege and the stipulation. DeLuca asserted more broadly that the Wachovia email raised serious questions about whether the government had examined and used other privileged documents in preparation of its case. The district court reserved ruling on the motion until after the trial. The Wachovia email was not entered into evidence.

4

After the second trial, DeLuca filed a renewed motion to dismiss the indictment for prosecutorial misconduct. He asserted that the government had improper, unlimited access to his privileged materials, and he requested an evidentiary hearing to call as witnesses various persons involved with handling the privileged materials and preparing the case against him. The government responded that DeLuca could not show that he was prejudiced by the alleged breach, because the privileged material was not entered into evidence or otherwise used by the prosecution. In reply, DeLuca analogized the government's use of privileged communications to the use of compelled, incriminating testimony.

The district court held an evidentiary hearing on DeLuca's motion to dismiss on June 4, 2013. The court heard testimony from former AUSA Guard, Agent Stelly, AUSA Stoddard, DeLuca, and the FBI computer analyst who initially segregated the data for the filter team. The district court held another hearing on DeLuca's motion to dismiss the indictment on October 11, 2012, again hearing testimony from Agent Stelly.

After the hearing, the district court denied DeLuca's motion to dismiss the indictment. The court first determined that the Wachovia email and other email communications were privileged and that the government had violated DeLuca's

5

attorney-client privilege by viewing privileged communications.[1]  But despite the government's disregard of "the important protections provided by the privilege," the court found that DeLuca had not shown that he was prejudiced by the violation, even if he had established a constitutional violation, so neither dismissal of the indictment nor vacatur of his convictions was appropriate.

Specifically regarding prejudice, the district court explained that DeLuca had not come forth with any evidence showing that any privileged material was directly used in the case against him at trial or otherwise influenced the government's prosecution strategy in any way.  According to the court, "the evidence show[ed] that though Agent Stelly did review a small percentage of privileged material, that material did not impact the case—very little of it was shown to the U.S. Attorney's office, and the single email that was shown to the prosecutor did not impact the trial strategy and was not introduced as evidence at trial."  "Furthermore," the court stated, "Agent Stelly was the only member of the prosecution team to view privileged data other than the Wachovia email."  In addition, the court found that DeLuca failed to explain how he *could have been* prejudiced by any of the emails, including the Wachovia email.  The district court also concluded that the result on the prejudice inquiry would be the same even if

---

[1]  The district court ordered the government to destroy all of the privileged communications in its possession and prohibited their use at sentencing.

6

the government bore the burden to show the lack of prejudice.  After he was sentenced on April 27, 2015, DeLuca filed this appeal.

## II.

The denial of a motion to dismiss the indictment is reviewed for an abuse of discretion.  *United States v. Cavallo*, 790 F.3d 1202, 1219 (11th Cir. 2015).  In determining whether a court abused its discretion, we review issues of law, such as the proper allocation of the burden of proof, *de novo*.  *See id.*

## III.

Precedent from this Circuit clearly establishes that dismissal of the indictment as a sanction for a violation of a defendant's attorney-client privilege is inappropriate absent "demonstrable prejudice."  *United States v. Ofshe*, 817 F.2d 1508, 1515 (11th Cir 1987); *United States v. Bell*, 776 F.2d 965, 973 (11th Cir. 1985); *United States v. Sander*, 615 F.2d 215, 219 (5th Cir. 1980).[2]  "[T]here is no *per se* rule requiring dismissal of the indictment as the sanction for intrusion into the attorney-client relationship by government agents."  *United States v. Melvin*, 650 F.2d 641, 643 (5th Cir. July 13, 1981) (describing the Supreme Court's decision in *United States v. Morrison*, 448 U.S. 361, 101 S. Ct. 665 (1981)).  Rather, for the sanction of dismissal to be appropriate, a showing of "demonstrable prejudice, or substantial threat thereof," must be made, even in cases where the

---

[2] This Court adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).

violation is a deliberate intrusion. *Morrison*, 448 U.S. at 365, 101 S. Ct. at 668; *see Ofshe*, 817 F.2d at 1515; *Bell*, 776 F.2d at 973. In most cases "[w]here there is an intrusion on the attorney-client relationship[,] the remedy for such a violation is not dismissal but the suppression of any evidence so obtained." *Sander*, 615 F.2d at 219.

We note at the outset that the grounding for DeLuca's motion to dismiss the indictment is unclear. Although he initially relied on the Sixth Amendment, he has since acknowledged that the Sixth Amendment does not apply because the privileged communications occurred well before the initiation of the prosecution against him. He also cited the Fifth Amendment, which may provide relief where the government's conduct is so outrageous that it violates a defendant's due-process rights, but the government's conduct in this case falls short of that standard. *Cf. Ofshe*, 817 F.2d at 1515–16 (no due-process violation where the government "placed a body bug on [the defendant's] attorney and surreptitiously monitored a conversation which included discussion concerning future criminal activity and discussions regarding his pending court case," in part because there was no "demonstrable evidence of prejudice"). On appeal, DeLuca's arguments are untethered to any specific constitutional violation. Instead, he bases them on the importance of the attorney-client privilege, but, in any case, he does not dispute that the district court properly required him to show prejudice under existing law.

Nevertheless, DeLuca does not challenge the district court's finding that he was not prejudiced by the government's violation of his attorney-client privilege. He has, therefore, abandoned any challenge to that finding, which otherwise appears to be well-supported by the record. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680–81 (11th Cir. 2014). Because this Circuit's precedent requires a showing of "demonstrable prejudice" in order for dismissal of the indictment to be appropriate, *see Ofshe*, 817 F.2d at 1515, it follows that the district court's denial of his motion to dismiss the indictment is due to be affirmed. *See Sapuppo*, 739 F.3d at 680. Even if we accepted DeLuca's contention that the government deliberately invaded the attorney-client relationship, dismissal is inappropriate without a showing of prejudice. *See Morrison*, 448 U.S. at 365, 101 S. Ct. at 668.

DeLuca argues that existing precedent requiring a defendant to show prejudice should be revisited. He contends that this requirement, though reasonable as applied to a world in which paper records were the norm, is outmoded as applied to modern-era digital communications and data storage. The ubiquitous use of computers and personal devices in daily life, he reasons, "not only makes privileged materials more readily available to the government, but also makes the task of searching for incriminating material significantly easier to

accomplish."[3]   DeLuca contends that it is impossible for a defendant to show prejudice because there is no way to track whether the government accessed privileged material or how the government used the privileged material it accessed. Relying on the Supreme Court's decision in *Kastigar v. United States*, 406 U.S. 441, 92 S. Ct. 1653 (1972), DeLuca proposes that, in cases where the government has deliberately invaded the defendant's attorney-client privilege, the government should be required to prove that all the evidence it proposes to use in the case was derived from a legitimate source independent of the government's misconduct.

In *Kastigar*, the Supreme Court held that the United States may compel testimony from an unwilling witness who invokes the Fifth Amendment privilege against compelled self-incrimination by granting the witness immunity from use or derivate use of the compelled testimony in subsequent criminal proceedings. 406 U.S. at 442, 462, 92 S. Ct. at 1655, 1666. If the witness is then prosecuted for a matter related to the compelled testimony, the government bears "the affirmative duty to prove that the evidence it proposes to use is derived from a legitimate source wholly independent of the compelled testimony." *Id.* at 461, 92 S. Ct. at 1665. According to DeLuca, the same burden should apply here.

---

[3] The government asserts, and the defendant disputes, that electronic storage and better computer software may in fact make it less likely that privileged material will be reviewed because, as in this case, a computerized search will be able to screen out potentially privileged information before it is reviewed by human beings.

10

However, this case does not involve compelled testimony, and whatever the merits of a *Kastigar*-like approach[4], our precedent requires a showing of demonstrable prejudice in order to obtain dismissal of the indictment as a sanction for the government's violation of the defendant's attorney-client privilege.  *See, e.g.*, *Ofshe*, 817 F.2d at 1515; *Bell*, 776 F.2d at 973.  As DeLuca acknowledges, we are bound to apply that requirement under the prior-panel-precedent rule.[5]  *United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008) ("[A] prior panel's holding is binding on all subsequent panels unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or this court sitting *en banc*.").

Moreover, DeLuca has provided no compelling reason why establishing prejudice is more difficult now than it was when, for example, *Ofshe* was decided in 1987.  Even accepting his contention that technological changes have made accessing privileged communications easier than it used to be in an age of paper records, it does not clearly follow that showing prejudice is more difficult than it used to be.  DeLuca asserts that a defendant will be unable to know whether the

---

[4] It makes sense that a presumption of prejudice would be in effect in a *Kastigar*-type situation, where the subsequent prosecution against the defendant relates to incriminating testimony that the government compelled by conferring immunity.  In that situation, a high potential exists for overlap between the compelled testimony and the case against the defendant, clearly implicating the defendant's constitutional right against compelled self-incrimination.  But that is not the case where the government has violated the attorney-client privilege, as the privileged information could potentially relate to any number of matters, some of which may have nothing at all to do with the case.

[5] For the same reason, we need not and do not address DeLuca's various other arguments by analogy to other areas of law, such as Fourth Amendment jurisprudence.

11

government has accessed information and what it has done with that information, but that is not a new concern. Indeed, Justice Marshall, in his dissenting opinion in *Kastigar*, which DeLuca quotes in his brief, recognized this same problem as it applied to compelled testimony in 1972:

> For the information relevant to the question of taint is uniquely within the knowledge of the prosecuting authorities. They alone are in a position to trace the chains of information and investigation that lead to the evidence to be used in a criminal prosecution. A witness who suspects that his compelled testimony was used to develop a lead will be hard pressed indeed to ferret out the evidence necessary to prove it. . . . For the paths of information through the investigative bureaucracy may well be long and winding, and even a prosecutor acting in the best of faith cannot be certain that somewhere in the depths of the investigative apparatus, often including hundreds of employees, there was not some prohibited use of the compelled testimony.

*Kastigar*, 406 U.S. at 469, 92 S. Ct. at 1669 (Marshall, J., dissenting). In other words, showing how the government used certain information within its control as part of a criminal investigation has always been an uphill battle. There is no qualitative difference between electronic records and paper records in that respect.

In sum, because there has been no showing of prejudice based on the government's violation of DeLuca's attorney-client privilege, the district court properly concluded that dismissal of the indictment was not appropriate. DeLuca

12

does not otherwise challenge his convictions or sentences.    We, therefore,

**AFFIRM**.[6]

_____

[6] To the extent DeLuca asks this panel to refer his case for *en banc* consideration, we DENY his request.  However, we note that he is free to file a petition for rehearing *en banc*.  *See* Fed. R. App. P. 35(b).